**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| ARTI ZADOURIYAN, | Case No. EDCV 26-2322-AS |
| Petitioner, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| FERETI SEMAIA, et al., | |
| Respondents. | |

**INTRODUCTION**

On May 4, 2026, Arti Zadouriyan ("Petitioner"), who is represented by counsel and is an immigration detainee in the custody of United States Immigration and Customs Enforcement ("ICE") at the Adelanto West ICE Processing Center in Adelanto, California, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition"), along with supporting exhibits, claiming that he has been detained since March 22, 2026, in violation of his Fifth Amendment due process rights. (Dkt. No. 1).

On May 11, 2026, Respondents filed an Answer to the Petition, along with a supporting declaration of deportation officer Saul Hernandez ("Hernandez Decl."). (Dkt. No. 7). Respondents contend that Petitioner's detention is authorized under Zadvydas v. Davis, 533 U.S. 678 (2001), due to his final removal order. (Answer at 1-3).

On May 12, 2026, Petitioner filed a Reply asserting that Respondents' Answer fails to address his "primary claim," which does not concern whether his detention is unreasonably prolonged under Zadvydas. (Dkt. No. 9). Instead, according to Petitioner, he is mainly challenging "the constitutionality of his abrupt re-detention after years of living freely in the community, without meaningful individualized review," including "pre-deprivation process." (Id. at 2 (emphasis added)).

On May 14, 2026, the Court ordered the parties to file supplemental briefs to clarify the record, particularly concerning whether Petitioner previously had been detained or released by immigration authorities, the extent to which he and immigration authorities were in contact prior to his current detention, and what process Petitioner was due when detained on March 22, 2026. (Dkt. No. 10). Petitioner and Respondents filed their respective supplemental briefs on May 19, 2026. (Dkt. Nos. 11-12). Respondents' brief includes a declaration of deportation officer Dade Gomez ("Gomez Decl."), and Petitioner's brief ("P. Supp.") includes a declaration of Petitioner and other exhibits.

For the reasons stated below, the Petition is DENIED.[1]

**BACKGROUND**

Petitioner, an Iranian citizen, has resided in the United States for over two decades and has been a lawful permanent resident since August 23, 2000. (Petition ¶ 19, Ex. B at 3; Hernandez Decl. ¶ 4).

Between 2008 and 2011, he was convicted of multiple offenses in Los Angeles County Superior Court, including possession of methamphetamine (Cal. Health & Safety Code § 11377(a)) on April 25 and June 3, 2008, for which he was sentenced to twenty-six days in jail and three years of probation; and two counts of identity theft (Cal. Penal Code § 530.5(a)) and one count of access card information theft (Cal. Penal Code § 484e(d)) on September 20, 2011, for which he was sentenced to 180 days in jail and three years of probation. (Petition Ex. B at 3; Hernandez Decl. ¶¶ 6-7).

Shortly after the latter conviction, on September 29, 2011, Petitioner was referred to ICE by the Los Angeles County Jail as a possible foreign-born inmate requiring an ICE interview. (Gomez Decl. ¶ 5). That interview resulted in a determination that Petitioner was not amenable to ICE enforcement at the time. (Id.).

---

[1] The parties have consented to proceed before the undersigned United States Magistrate Judge. (See Dkt. Nos. 3, 4, 8).

3

On January 23, 2015, Petitioner applied for admission at Los Angeles International Airport as a returning permanent resident, and an immigration officer took his sworn statement. (Petition Ex. B at 3; Hernandez Decl. ¶ 8; Gomez Decl. ¶ 6). After then reviewing Petitioner's immigration file and criminal record, immigration authorities determined that he was inadmissible. (Gomez Decl. ¶ 7).

On May 26, 2017, the United States Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear charging him as removable under section 212(a)(2)(A)(i)(I)-(II) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(2)(A)(i)(I)-(II). (Petition Ex. B at 3; Gomez Decl. ¶ 7).

About a month later, on June 29, 2017, Petitioner was encountered by ICE at the Los Angeles County Jail following his arrest for possession of a controlled substance. (Gomez Decl. ¶ 8).

On April 6, 2018, an immigration judge ordered Petitioner removed to Iran, in absentia. (Hernandez Decl. ¶ 9; Gomez Decl. ¶ 9).

Subsequently, DHS lodged an immigration detainer against Petitioner on numerous occasions when he was arrested by local law enforcement authorities. Specifically, DHS lodged immigration detainers (1) on April 20, 2018, when it was alerted to Petitioner's Los Angeles County arrest for possession of a controlled substance;

4

(2) on May 1, 2018, when it was alerted to Petitioner's encounter with the Glendale Police Department; (3) on June 29, 2018, when it was alerted to Petitioner's encounter with the Los Angeles Police Department for shoplifting; (4) on July 24, 2018, when it was alerted to Petitioner's Los Angeles County arrest for possession of a controlled substance; (5) on July 31, 2018, when it was alerted to Petitioner's encounter with the Glendale Police Department for possession of a controlled substance; (6) on October 24, 2018, when it was alerted to Petitioner's Los Angeles County arrest for theft and possession/purchase of a controlled substance; (7) on July 23, 2019, when it was alerted to Petitioner's arrest by the Glendale Police Department for transport of a controlled substance; (8) on November 7, 2019, when it was alerted to Petitioner's custody by the Glendale Police Department; and (9) on December 22, 2019, when it was alerted to Petitioner's custody by the Glendale Police Department. (Gomez Decl. ¶¶ 10-18). Notwithstanding the immigration detainers lodged against him, Petitioner was not taken into immigration custody on any of these occasions.

During this period, Petitioner was convicted of several criminal offenses in Los Angeles County Superior Court, including petty theft (Cal. Penal Code § 490.2(a)) on January 23, 2019, for which he was sentenced to thirty days jail; the transport/sale of a controlled substance (Cal. Health & Safety Code § 11379(a)) on April 18, 2019, for which he was sentenced to three years in jail and three years of probation; and fighting in public (Cal. Penal Code § 415(1)) on February 10, 2020, for which he was sentenced to thirty days in jail. (Hernandez Decl. ¶¶ 10-12). Additionally, on

October 18, 2022, he was convicted of shoplifting (Cal. Penal Code § 459.5) and sentenced to a year of probation. (Hernandez Decl. ¶ 12).

Petitioner's prior criminal matters have been fully resolved, as he has completed all required sentences, has no pending charges, and has since "demonstrated rehabilitation and long-term compliance with the law." (Petition ¶¶ 33-34).

On March 22, 2026, ICE arrested Petitioner at his residence and placed him into custody, without notice or any individualized custody determination. (Id. ¶¶ 21, 23). He was arrested during a vehicle stop just after ICE officers, conducting a targeted enforcement operation to locate Petitioner, saw him exit his driveway. (Hernandez Decl. ¶¶ 15-16; Gomez Decl. ¶ 19). He has not received any bond hearing or other opportunity to contest his detention. (Petition ¶ 24).

On April 3, 2026, Petitioner filed a motion to reopen his removal proceedings, which an immigration judge denied on April 24, 2026. (Hernandez Decl. ¶ 14; Dkt. No. 11-7 at 1; Gomez Decl. ¶ 20).

On May 12, 2026, Petitioner refused to answer questions for his travel documents request packet. (Gomez Decl. ¶ 21). On May 14, 2026, DHS submitted a travel document request for review and issuance which is currently pending. (Id. ¶ 22).

Petitioner has deep and longstanding ties to the United States, where his entire immediate and extended family resides. (Petition ¶ 20). He is the primary caregiver for his mother, age seventy-eight, who suffers from severe and chronic medical conditions, including debilitating back and knee issues that significantly impair her daily functioning. (Id. ¶ 25). He is solely responsible for her care, including transporting her to medical appointments, managing her medications, assisting with daily tasks, and providing financial support. (Id. ¶ 26, Ex. C).

Petitioner is also engaged and has formed a stable family unit with his fiancée and her children, for whom he serves as a father figure, providing daily care, emotional guidance, and financial support. (Id. ¶ 28, Ex. C). His financial support was critical to his fiancée's daughter, who was pursuing higher education but was forced to withdraw from the university as a result of Petitioner's detention. (Id. ¶ 30).

Petitioner suffers from high blood pressure, which has worsened in detention and poses serious health risks. (Id. ¶ 31).

**DISCUSSION**

For the reasons stated below, Petitioner fails to demonstrate that he was unlawfully detained by ICE or that he otherwise merits release from immigration custody or other relief at this juncture.

7

**A.    Petitioner's   Arrest   Without   Pre-Deprivation   Notice   and   Hearing Does Not Render His Detention Unlawful**

Petitioner asserts that the issue here "is whether DHS may abruptly detain a long-time lawful permanent resident in 2026 — after years of knowingly permitting him to live openly in the community — without any meaningful individualized custody determination or procedural safeguards." (P. Supp. at 6). In particular, he contends that in the "unique circumstances presented here," he was entitled to meaningful "pre-deprivation process" when arrested by ICE on March 22, 2026, and that the government's failure to provide such process merits his release from custody. (See Reply at 2-6; P. Supp. at 7-12; Petition at 8).

To support his right for "pre-deprivation process," he has cited Manoukyan v. Lyons, EDCV 26-0524-SPG (AJR), 2026 WL 712221, at *6-8 (C.D. Cal. Mar. 4, 2026), in which Judge Garnett found that the petitioner, who was subject to a final removal order and had previously been released under an order of supervision ("OSUP"), had a due process right to a hearing before being re-detained, and he was entitled to release from custody where the government had failed to provide such pre-deprivation process. (See Petition at 3, Ex. D; Reply at 8). Petitioner acknowledges that, unlike the petitioner in Manoukyan, he was never previously detained and released from immigration custody pursuant to an order of supervision ("OSUP"). (P. Supp. at 2). He nonetheless argues that the Due Process Clause entitled him to pre-deprivation notice and a hearing and that "the constitutional principles underlying

8

Manoukyan, Morrissey v. Brewer, 408 U.S. 471 (1972), and Mathews v. Eldridge, 424 U.S. 319 (1976), remain highly instructive here." (P. Supp. at 2).

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. The Supreme Court has firmly established that "the Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 679 (2001); see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings." (citation omitted)). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690.

Because Petitioner therefore has at least some liberty interest in remaining out of custody, the Due Process Clause requires Respondents to provide him "the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. at 333. To determine what process he is due, the Court considers the following three factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures

9

used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 335.

Petitioner fails to demonstrate that these factors weigh in favor of requiring a pre-deprivation hearing. As to the first factor, Petitioner's private interest in remaining out of custody may be significant, but it is nonetheless limited, given that he has had no legal status and had not been expressly determined to merit being out of immigration custody. The government generally has the authority to arrest noncitizens subject to final orders of removal and to detain them for the purpose of effectuating their removal. See, e.g., 8 U.S.C. § 1231(a)(1)-(2), (6); 8 C.F.R. §§ 241.3, 241.4; Zadvydas, 533 U.S. at 701 (holding that six months of detention was presumptively reasonable to effectuate removal of noncitizens subject to final orders of removal). Thus, while Respondents had previously refrained from detaining Petitioner, and instead had permitted him to remain at liberty for many years, that liberty was nonetheless tenuous.

In this way, Petitioner's situation differs considerably from those noncitizens who were previously detained and then released from immigration custody. The government's express decision to

release such individuals from custody creates "an implicit promise," upon which that individual may rely, that his or her liberty "will be revoked only if he [or she] fails to live up to the . . . conditions [of release]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972); see also Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."). There was no implicit promise here, and any reliance on one would not have been reasonable. Rather, Petitioner's prolonged liberty endured only under the threat of detention pursuant to his final order of removal, without further cause or notice.

As to the second Mathews factor, because Petitioner had not previously undergone an assessment of his status or a determination as to whether his release would pose a danger to the community or a flight risk, providing him with a post-detention hearing would pose only a low or moderate risk of erroneous deprivation of liberty. Again, in this respect his situation differs significantly from those who were previously released from detention upon a finding that they do not pose a danger or flight risk. See, e.g., Rivera Larios v. Albarran, 2025 WL 3043391, at *8 (N.D. Cal. Oct. 31, 2025) ("The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard." (citing Garcia v. Andrews, 2025 WL 1927596,

11

at *5 (E.D. Cal. July 14, 2025); Arzate v. Andrews, 2025 WL 2230521, at *5 (E.D. Cal. Aug. 4, 2025))).

Third, "the government clearly has a strong interest in preventing [noncitizens] from 'remain[ing] in the United States in violation of our law,'" and thus in detaining noncitizens to "'increas[e] the chance that, if ordered removed, the [noncitizens] will be successfully removed.'" Rodriguez Diaz v. Garland, 53 F.4th 1189, 1208 (9th Cir. 2022) (quoting Demore v. Kim, 538 U.S. 510, 515, 528 (2003)). That interest is naturally greater for noncitizens who present a flight risk while the government undergoes efforts to remove them. But where Petitioner had not previously been assessed for flight risk, and apparently had no contact with ICE/DHS for several years, the government's interest in detaining him at least initially is significant. Cf. Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("Due process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." (citing Zadvydas, 533 U.S. at 690-91)).

On balance, the Mathews factors suggest that Petitioner, unlike those who are re-detained after being released on bond, was not entitled to a pre-detention hearing. Notwithstanding his prolonged liberty, Petitioner remained subject to being detained, without notice, pursuant to the final order of removal. Once arrested, he was interviewed by an immigration officer, and it was determined that an immigration judge had ordered him removed eight

years earlier. (See Hernandez Decl. ¶ 16; Dkt. No. 11-5). That suffced as grounds to detain him. He subsequently was able to seek to reopen his removal proceedings and challenge that order. Otherwise, his due process rights with respect to detention are adequately addressed by the framework set forth in Zadvydas and subsequent authorities, addressed below.

**B.**   **Petitioner Has Not Demonstrated That His Continued Detention Is Unlawful**

Although Petitioner apparently continues to seek the reopening of his removal proceedings in immigration court (see Reply at 9), he remains subject at this time to the final removal order that was issued in absentia on April 6, 2018. The INA establishes a framework for detaining noncitizens subject to final removal orders. Specifically, under 8 U.S.C. § 1231(a), which "governs the detention, release, and removal of individuals 'ordered removed,'" Johnson v. Arteaga-Martinez, 596 U.S. 573, 578 (2022), the Attorney General is directed to remove aliens subject to final orders of removal within ninety days (the "removal period"), and is further directed to detain such aliens during the removal period, 8 U.S.C. § 1231(a)(1)-(2). "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Arteaga-Martinez, 596 U.S. at 578-79 (quoting 8 U.S.C. § 1231(a)(6)); Clark v.

13

Martinez, 543 U.S. 371, 377 (2005); see also Zadvydas, 533 U.S. at 688 ("The post-removal-period detention statute applies to certain categories of aliens who have been ordered removed, namely, inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well as any alien 'who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal.'" (citations omitted)). Petitioner falls within at least one of these categories. See 8 U.S.C. § 1231(a)(6) ("An alien ordered removed who is inadmissible under section 1182 of this title . . . may be detained beyond the removal period[.]").

"Section 1231(a)(6) does not expressly specify how long detention past the 90-day removal period may continue for those who fall within the four designated statutory categories." Arteaga-Martinez, 596 U.S. at 579. But in Zadvydas, the Supreme Court "applied the canon of constitutional avoidance and determined that 'read in light of the Constitution's demands,' § 1231(a)(6) 'does not permit indefinite detention' but instead 'limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.'" Arteaga-Martinez, 596 U.S. at 579 (quoting Zadvydas, 533 U.S. at 689). "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Zadvydas, 533 U.S. at 689; Clark, 543 U.S. at 378. "[T]he presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is

14

eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.'" Clark, 543 U.S. at 378 (quoting Zadvydas, 533 U.S. at 701). In other words, the "6-month presumption . . . does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701. Zadvydas "places the burden on the [noncitizen] to show, after a detention period of six months, that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" Pelich v. Immigr. & Naturalization Serv., 329 F.3d 1057, 1059 (9th Cir. 2003) (quoting Zadvydas, 533 U.S. at 701). If that burden is met, "the Government must respond with evidence sufficient to rebut that showing." Zadvydas, 533 U.S. at 701.

Here, Petitioner has been detained for just over two months, since March 22, 2026. (Hernandez Decl. ¶¶ 15; Gomez Decl. ¶ 19). Even assuming the ninety-day removal period of mandatory detention does not apply,[2] his detention is still well within the

---

[2] Because Petitioner was ordered removed in absentia on April 6, 2018 (Hernandez Decl. ¶ 9), the removal order became final on that date, 8 C.F.R. § 1241.1(e), and the ninety-day removal period of mandatory detention began on that date, 8 U.S.C. § 1231(a)(1)(B); Diouf v. Mukasey, 542 F.3d 1222, 1229 (9th Cir. 2008). While the removal period may be extended if the noncitizen "fails or refuses to make timely application in good faith for travel or other documents necessary to [his] departure or conspires or acts to prevent [his] removal subject to an order of removal," 8 U.S.C. § 1231(a)(1)(C), Respondent has not shown that this applies here, and Petitioner expressly asserts that he did not

presumptively reasonable period under Zadvydas. Moreover, he has not argued that his removal is unlikely to occur in the reasonably foreseeable future, and there are no facts before the Court to suggest this. Petitioner therefore has not satisfied his burden to demonstrate grounds for relief.

**ORDER**

Accordingly, the Court DENIES the Petition.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 29, 2026

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

---

knowingly evade immigration proceedings at any time (P. Supp. at 5-6); see also Diouf, 542 F.3d at 1231 n.4 ("[I]t is the burden of the government to document the conduct that extends the removal period under § 1231(a)(1)(C).").

16